COOLEY LLP
REUBEN H. CHEN (228725)
rchen@cooley.com
KYLE D. CHEN (239501)
kyle.chen@cooley.com
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

Attorneys for Defendants
COOLER MASTER CO., LTD. and
CMI USA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AAVID THERMALLOY LLC,<br><br>Plaintiff,<br><br>v.<br><br>COOLER MASTER CO., LTD. and CMI USA, INC.,<br><br>Defendants. | Case No. 4:17-cv-05363-JSW<br><br>**DEFENDANTS' AMENDED ANSWER TO COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**AND** |
| COOLER MASTER CO., LTD,<br><br>Counter-Claim Plaintiff,<br><br>v.<br><br>AAVID THERMALLOY LLC and BOYD CORPORATION<br><br>Counter-Claim Defendants. | **COOLER MASTER CO., LTD.'S COUNTER-CLAIMS** |

Defendants Cooler Master Co., Ltd. ("Cooler Master") and CMI USA, Inc. ("CMI") (collectively, "Defendants") hereby submit their Amended Answer to the allegations made in Plaintiff Aavid Thermalloy, LLC's ("Aavid" or "Plaintiff") Complaint for Patent Infringement filed on September 15, 2017 (the "Complaint") (Dkt. 1). Each paragraph below corresponds to the same numbered paragraph of Aavid's Complaint. Defendants deny any and all allegations in Aavid's

Complaint, whether express or implied, that are not specifically admitted below.

## NATURE OF THE ACTION

**1.** Defendants admit only that the Complaint purports to seek judgement of patent infringement and that copies of U.S. Patent Nos. 7,066,240 (the "'240 patent"), 7,100,679 (the "'679 patent"), and 7,100,680 (the "'680 patent") (collectively, the "patents-in-suit") have been attached to the Complaint as Exhibits A, B, and C, respectively. Defendants are without information or knowledge sufficient to admit or deny the other allegations in paragraph 1 and therefore deny them.

## PARTIES

**2.** Defendants are without information or knowledge sufficient to admit or deny the allegations in paragraph 2 and therefore deny them.

**3.** The allegations in paragraph 3 are admitted.

**4.** The allegations in paragraph 4 are admitted.

**5.** The allegations in paragraph 5 are denied.

## JURISDICTION AND VENUE

**6.** Defendants admit that the Complaint is related to the patent laws of Title 35 of the United States Code and that this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a). The other allegations in paragraph 6 are denied.

**7.** Defendants admit that this Court has personal jurisdiction over them and that they have facilities and operations based in California. The other allegations in paragraph 7 are denied.

**8.** The allegations in paragraph 8 are denied.

**9.** The allegations in paragraph 9 are denied.

**10.** The allegations in paragraph 10 are denied.

**11.** Cooler Master admits that venue is proper as to Cooler Master only. The other allegations in paragraph 11 are denied. Specifically, CMI denies that venue is proper as to CMI under 28 U.S.C. § 1400(b) and *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017).

## FACTUAL BACKGROUND

**12.** Defendants are without information or knowledge sufficient to admit or deny the allegations in paragraph 12 and therefore deny them.

**13.** Cooler Master admits that a copy of a purported letter dated March 8, 2017 and a copy of a purported "Proof of Delivery" have been attached to the Complaint as Exhibits D and E, respectively. The other allegations in paragraph 13 are denied.

**14.** CMI admits that a copy of a purported letter dated March 22, 2017 and a copy of another purported "Proof of Delivery" have been attached to the Complaint as Exhibits F and G, respectively. The other allegations in paragraph 14 are denied.

**15.** Defendants are without information or knowledge sufficient to admit or deny the allegations in paragraph 15 and therefore deny them.

**16.** Defendants deny that any valid and enforceable claims of the patents-in-suit are infringed. Defendants are without information or knowledge sufficient to admit or deny the other allegations in paragraph 16 and therefore deny them.

**17.** The allegations in paragraph 17 are denied.

**18.** The allegations in paragraph 18 are denied.

**19.** Defendants are without information or knowledge sufficient to admit or deny the allegations in paragraph 19 and therefore deny them.

**20.** The allegations in paragraph 20 are denied.

**21.** The allegations in paragraph 21 are denied.

**22.** The allegations in paragraph 22 are denied.

**23.** Defendants deny that any valid and enforceable claims of the patents-in-suit are infringed. Defendants are without information or knowledge sufficient to admit or deny the other allegations in paragraph 23 and therefore deny them.

**24.** The allegations in paragraph 24 are denied.

**COUNT I: ALLEGED INFRINGEMENT OF U.S. PATENT 7,066,240**

**25.** Defendants incorporate by reference each and every response herein to an allegation set forth in paragraphs 1 through 24 of the Complaint as if fully stated in this paragraph.

**26.** Defendants admit the '240 patent appears to be entitled "Integrated Circuit Heat Pipe Heat Spreader with Through Mounting Holes." Defendants are without information or knowledge sufficient to admit or deny the other allegations in paragraph 26 and therefore deny them.

**27.** The allegations in paragraph 27 are denied.

**28.** The allegations in paragraph 28 are denied.

**29.** The allegations in paragraph 29 are denied.

**COUNT II: ALLEGED INFRINGEMENT OF U.S. PATENT 7,100,679**

**30.** Defendants incorporate by reference each and every response herein to an allegation set forth in paragraphs 1 through 29 of the Complaint as if fully stated in this paragraph.

**31.** Defendants admit the ’679 patent appears to be entitled “Integrated Circuit Heat Pipe Heat Spreader with Through Mounting Holes.” Defendants are without information or knowledge sufficient to admit or deny the other allegations in paragraph 31 and therefore deny them.

**32.** The allegations in paragraph 32 are denied.

**33.** The allegations in paragraph 33 are denied.

**34.** The allegations in paragraph 34 are denied.

**COUNT III: ALLEGED INFRINGEMENT OF U.S. PATENT 7,100,680**

**35.** Defendants incorporate by reference each and every response herein to an allegation set forth in paragraphs 1 through 34 of the Complaint as if fully stated in this paragraph.

**36.** Defendants admit the ’680 patent appears to be entitled “Integrated Circuit Heat Pipe Heat Spreader with Through Mounting Holes.” Defendants are without information or knowledge sufficient to admit or deny the other allegations in paragraph 36 and therefore deny them.

**37.** The allegations in paragraph 37 are denied.

**38.** The allegations in paragraph 38 are denied.

**39.** The allegations in paragraph 39 are denied.

**PRAYER FOR RELIEF**

Defendants incorporate by reference all preceding paragraphs as if fully set forth herein. Defendants deny any and all allegations of patent infringement alleged in the Complaint. Defendants deny any and all allegations that Plaintiff is entitled to any relief requested in paragraphs “A”-“F” of the Complaint’s “PRAYER FOR RELIEF,” or any other relief.

**JURY DEMAND**

No response by Defendants is required to Plaintiff’s demand for a jury trial.

**AFFIRMATIVE DEFENSES**

Pursuant to Federal Rule of Civil procedure 8(c), Defendants assert the following defenses, without waiver, limitation, or prejudice. Defendants specifically reserve their right to allege additional defenses that become known throughout the course of this litigation.

**FIRST AFFIRMATIVE DEFENSE (NONINFRINGEMENT)**

**40.** Defendants do not infringe and have not infringed any valid and enforceable claim of the patents-in-suit directly or indirectly, either by inducement or contribution, either literally or under the doctrine of equivalents.

**SECOND AFFIRMATIVE DEFENSE (INVALIDITY)**

**41.** Each and every claim of the patents-in-suit is invalid for failure to satisfy one or more of the requirements and/or conditions for patentability under Title 35 of the United States Code, including, *inter alia*, Sections 101, 102, 103, and 112.

**THIRD AFFIRMATIVE DEFENSE (UNCLEAN HANDS)**

**42.** On information and belief, Aavid's claims for relief are barred, in whole or in part, by the doctrine of unclean hands based on the factual allegations set forth in detail in Cooler Master's Counterclaims, *infra*, which are incorporated by reference herein.

**FOURTH AFFIRMATIVE DEFENSE (PROSECUTION HISTORY ESTOPPEL)**

**43.** On information and belief, Aavid is estopped from asserting that Defendants infringe one or more of the claims of the patents-in-suit under the doctrine of prosecution history estoppel.

**FIFTH AFFIRMATIVE DEFENSE (LACHES, ACQUIESCENCE, WAIVER, ESTOPPEL)**

**44.** On information and belief, Aavid's claims for relief are barred, in whole or in part, by the doctrines of laches, acquiescence, waiver and/or estoppel.

**SIXTH AFFIRMATIVE DEFENSE (SUBSTANTIAL NONINFRINGING USE)**

**45.** On information and belief, Aavid's claims for contributory infringement are barred, in whole or in part, under 35 U.S.C. § 271(c), in view of the substantial noninfringing use of the allegedly accused products.

**SEVENTH AFFIRMATIVE DEFENSE (NO INJUNCTIVE RELIEF)**

**46.** On information and belief, Aavid is not entitled to injunctive relief because any injury is not immediate and/or irreparable, and because Aavid has adequate remedies at law.

**EIGHTH AFFIRMATIVE DEFENSE (LIMITATION OF DAMAGES)**

**47.** On information and belief, Aavid's claims for costs and/or damages are barred, in whole or in part, by 35 U.S.C. §§ 286, 287 and/or 288.

**NINTH AFFIRMATIVE DEFENSE (FAILURE TO STATE A CLAIM)**

**48.** The Complaint fails to state a claim upon which relief can be granted.

**TENTH AFFIRMATIVE DEFENSE (IMPROPER VENUE)**

**49.** CMI reserves its right to assert that venue is not proper in this judicial district under 28 U.S.C. § 1400(b) at least because CMI does not reside and lacks a regular and established place of business in this judicial district.

## COOLER MASTER'S COUNTER-CLAIMS

COMES NOW Counter-Claim Plaintiff Cooler Master Co., Ltd. ("Counter-Claim Plaintiff" or "Cooler Master"), by and through its attorneys, and for its counter-claims against Counter-Claim Defendants Aavid Thermalloy LLC ("Aavid") and Boyd Corporation ("Boyd") (collectively "Counter-Claim Defendants"). Boyd can be joined in this action pursuant to Fed. R. Civ. P. 20.

### NATURE OF THE ACTION

**1.** Cooler Master's counter-claims against Counter-Claim Defendants are based on federal and state trade secret misappropriation under 18 U.S.C. § 1836, *et seq.*, California Civil Code 3426, *et seq.*, and the common law.

### PARTIES

**2.** Cooler Master is a corporation organized and existing under the laws of Taiwan with its principal place of business located at 9F, 778-1, Zhongzheng Road, Zhonghe District, New Taipei City, 23586, Taiwan. Established in 1992, Cooler Master is a world leader in the production of computer components and peripherals, including thermal solutions such as air and liquid cooling products for computer systems.

**3.** On information and belief, Aavid is a Delaware limited liability company with a principal place of business at 1 Aavid Circle, Laconia, New Hampshire 03246.

**4.** On information and belief, Boyd is a corporation based in California in part, with its principal place of business located at 5960 Inglewood Dr. Suite 115, Pleasanton, California 94588.

**5.** On information and belief, Boyd also maintains two other regular places of business in California, located at 150 S 1st Street, Suite 200, San Jose, California 95113 and 600 S. McClure Road Modesto, California 95357, respectively.

**6.** On information and belief, Boyd is the parent company of Aavid.

**7.** On information and belief, Boyd also maintains and operates Aavid as an internal division called "Aavid, Thermal Division of Boyd Corporation" located at the same address as that of Aavid's principal place of business.

## JURISDICTION AND VENUE

**8.** This Court has jurisdiction over Cooler Master's counter-claims pursuant to, without limitation, 28 U.S.C. §§ 1331, 1332, 1337, and 1367. The amount in controversy exceeds the minimal requirement under 28 U.S.C. § 1332.

**9.** Aavid has invoked and thus is subject to this Court's jurisdiction by asserting claims against Cooler Master for alleged patent infringement in this judicial district.

**10.** Boyd is subject to this Court's general jurisdiction because it is headquartered in this judicial district and maintains regular places of business in this and other districts in California.

**11.** Venue is proper as to Aavid because it is asserting claims against Cooler Master for alleged patent infringement in this judicial district.

**12.** Venue is proper as to Boyd because it is headquartered in this judicial district and maintains regular places of business in this judicial district.

## FACTUAL BACKGROUND

**13.** Computers have transformed the way people live their lives today and have become embedded in the fabric of countless businesses, organizations, and other human endeavors. They impact almost every aspect of life today. But despite vast improvements in the performance, efficiency, and size of computers and electronic components over the past decades, one issue has remained of constant concern – heat. Key components in modern computers, such as processors, can

generate significant amounts of heat as electricity passes through them. If this heat is not removed, electronic components can overheat and malfunction, causing the computer systems to fail. To address this problem, Cooler Master has developed a line of thermal solutions for cooling critical electronic components so computers can continue to operate smoothly.

**14.** On information and belief, Aavid holds itself out as a competitor of Cooler Master as also providing thermal management solutions for computer and electronic components. On information and belief, Boyd acquired Aavid in 2017 and has been maintaining and operating Aavid internally as the "Thermal Division of Boyd Corporation" (*see* Boyd's "2017-05-08" company news entitled "Boyd Corp Completes Acquisition of Aavid Thermalloy": "Aavid Thermalloy … will operate as a division of Boyd Corporation" (at https://www.boydcorp.com/boyd-insights/company-news/item/148-boyd-corp-completes-acquisition-of-aavid-thermalloy.html). On information and belief, Boyd controls and manages every aspect of Aavid's operations, including without limitation the conduct and acts of Aavid that gave rise to the causes of action alleged below.

**A. Independent Testing Organizations**

**15.** Products today must comply with a vast number of different requirements, which may arise from government regulations, international standards, specific customer requirements, or a number of other sources. Independent testing organizations exist to assist manufacturers in meeting those requirements. These organizations typically develop a series of testing processes and procedures designed to evaluate a product (often before its commercial release) to ascertain compliance with the relevant requirements. Manufacturers often rely on the results of these tests to guide product design and, if needed, modify their products to bring them into compliance with applicable requirements.

**16.** Independent testing organizations, because they work with many different manufacturers and focus specifically on testing, can develop deep expertise on a set of requirements – often greater than any individual manufacturer could alone achieve if attempting to perform compliance testing in-house. Independent testing organizations thus make product development more efficient for manufacturers. And by providing a more centralized source of product testing, independent testing organizations ensure that relevant requirements are applied in a consistent and uniform manner across an industry. Independent testing has existed for more than a century and has

become an essential tool to the efficient development of safe and compliant products across a wide range of industries.

**17.** Independent testing organizations are particularly important to the development of technology products. Technology companies frequently send products to independent testing organizations, before their release to the public, to validate product performance and compliance with particular requirements. Independent testing has thus become a significant source of revenues for companies that perform such testing, such as Aavid and Boyd.

**18.** Reputable independent testing organizations generally operate under a set of guidelines to ensure that product testing is performed in a professional and ethical manner. These guidelines include, among other things, maintaining independence from the manufacturer customers (to ensure that the testing results are not biased), and confidentiality to ensure that the testing organizations do not improperly disclose customer-provided information, or misappropriate or otherwise misuse such information for their own benefit. These latter guidelines are particularly critical because, without them, manufacturer customers would be discouraged from sending not-yet-released products to any independent testing organizations for fear that such organizations will abuse their position of trust by misappropriating or misusing customer-provided information. To take just one example, ISO 9001:2008 (an international standard with which Aavid and Boyd apparently claim compliance) generally specifies that an organization protect and safeguard customer-provided property. Additional guidelines and safeguards are often imposed as a matter of custom and contract.

**B. <u>Aavid's Abuse of Its Independent Testing Role</u>**

**19.** On information and belief, Aavid holds itself out to the public as a leading independent testing organization. On information and belief, Boyd acquired Aavid in 2017, including its testing organization, and has been maintaining and operating Aavid as an internal division of Boyd called "Aavid, Thermal Division of Boyd Corporation" (*see* an excerpt of Boyd's website on the next page at <u>https://www.boydcorp.com/aavid.html</u>). According to Boyd's company website: "Aavid's testing and validation services are designed to ensure that products and solutions meet application requirements as well as industry standards. With 11 design centers across the globe, testing and validation services are available regionally, staffed by engineers familiar with both global standards

and local needs. Aavid engineering's commitment to innovative problem solving extends to testing services; engineers collaborate closely with customers and are able to adapt to any unique needs or specifications to ensure full product validation" (at https://www.boydcorp.com/services/testing-validation.html).




**20.** On information and belief, by acquiring Aavid and its testing organization and by then maintaining and operating Aavid internally as a division of Boyd, Boyd has assumed all liabilities resulting from any and all conduct and acts of Aavid and its testing organization, including without limitation those alleged herein. On information and belief, Aavid and Boyd collaborate in providing the testing and validation services to third-party customers. Further, Aavid and Boyd are agents of each other and act on behalf of each other in performing the acts described herein.

**21.** The wrongful conduct and acts of Aavid and Boyd, as described below, resulted from serving in a dual role of (1) offering their own thermal management products, while at the same time, (2) offering supposedly independent testing services for other companies' thermal management products. On information and belief, Aavid and Boyd abused this dual role by misappropriating and misusing confidential and trade-secret information obtained from independent testing for their own competitive purposes.

**22.** On information and belief, during 2016, a third-party customer of Cooler Master ("Third-Party Customer") requested that Aavid conduct performance testing and validation of certain non-public "vapor chamber" product samples that were claimed to have originated from Cooler Master. These product samples included prototypes that were not yet released to the public, such as the one shown in the picture under paragraph 18 of Aavid's Complaint (Dkt. 1) with part number 430-046761 ("Non-Public Samples"). On information and belief, the Third-Party Customer asked Aavid to conduct "thermal resistance" related testing of the Non-Public Samples. On information and belief, Aavid was told that these Non-Public Samples had originated from Cooler Master, a company that Aavid apparently regarded as a competitor.

**23.** On information and belief, Aavid, while purportedly conducting the requested thermal resistance related testing for the Third-Party Customer, additionally performed unauthorized X-ray imaging of the Non-Public Samples to obtain pictures showing the samples' internal design and architecture. This X-ray imaging, on information and belief, was not required by the thermal resistance related testing that Aavid had been hired to perform. In fact, on February 13, 2018, Aavid's counsel sent a letter to Cooler Master's counsel, in which Aavid expressly conceded that the X-ray "imaging … was performed *strictly for purposes of this litigation*" (emphasis added) and thus, not for the testing commissioned by the Third-Party Customer. Aavid thus abused its independent testing role for its own benefit by performing unauthorized X-ray imaging on the Non-Public Samples that had no relevance to the testing Aavid was hired to perform.

**24.** As noted, this X-ray imaging took place at a time when the Non-Public Samples were still confidential, embodying trade-secret information subject to non-disclosure and other confidentiality obligations. Cooler Master did not release products relating to the Non-Public Samples to the public until approximately a year after Aavid's unauthorized X-ray imaging took place.

**25.** On information and belief, Aavid did not tell the Third-Party Customer that Aavid was performing such unauthorized X-ray imaging on the Non-Public Samples. That was because, on information and belief, Aavid knew or had reason to know that the Non-Public Samples were prototype products that contained confidential and/or trade-secret information of Cooler Master. Aavid thus knew or had reason to know that such information was subject to confidentiality restrictions that

included, among other things, obligations that limited the disclosure and use of such information. On information and belief, Aavid performed X-ray imaging on the Non-Public Samples (rather than disassembly or other more invasive forms of physical examination) in order to avoid detection.

**26.** On information and belief, Aavid attempted to misuse the fruits of its improper X-ray imaging in a number of ways.

**27.** First, on information and belief, Aavid misappropriated and misused the confidential trade-secret information to start a patent litigation campaign against Cooler Master to gain unfair competitive advantage. At the time when the improper X-ray imaging of the Non-Public Samples took place, Aavid did not even own the patents-in-suit, which actually belonged to a third-party holding company, Thermal Corp. On information and belief, Aavid obtained control of Thermal Corp. in late 2016 *after* the unauthorized X-ray imaging, and recorded an assignment of the patents-in-suit in March 2017 with the U.S. Patent and Trademark Office ("USPTO"). On information and belief, Aavid misused the trade-secret information obtained through the improper X-ray imaging in deciding to acquire the patents-in-suit for the purpose of initiating a litigation campaign against Cooler Master. As conceded by Aavid's counsel, the X-ray "imaging … was performed *strictly for purposes of this litigation*" (emphasis added). Indeed, Aavid acquired the patents-in-suit on March 2, 2017 (according to the USPTO's assignments database), and sent its first warning letter based on the patents-in-suit to Cooler Master on March 8, 2017 (Dkt. 1-4), merely six days later. Thus, on information and belief, Aavid misused the trade-secret information obtained through the improper X-ray imaging to initiate a litigation campaign against Cooler Master for unfair competition purposes.

**28.** Second, on information and belief, Aavid misused the trade-secret information obtained through the unauthorized X-ray imaging by making allegations to the Third-Party Customer and to other customers and potential customers of Cooler Master that its products infringed Aavid's newly-acquired patents-in-suit. These allegations of infringement, although untrue, were designed to disrupt the demand for Cooler Master's products and to interfere with Cooler Master's commercial relationships with the Third-Party Customer and other customers in the market. At the time of this interference, Cooler Master was still many months away from its first public release of the products relating to the Non-Public Samples. Cooler Master believes that its commercial relationships have, in

fact, been disrupted, which has caused substantial economic harm to Cooler Master including without limitation loss of substantial prospective sales to Aavid.

**29.** Thus, on information and belief, Aavid and Boyd have been unjustly enriched by the misappropriation and misuse of the trade-secret information embodied in the Non-Public Samples, including through the acquisition of the patents-in-suit to initiate a litigation campaign against Cooler Master and through the disruption and interference of Cooler Master's commercial relationships.

**COUNT I: VIOLATION OF DEFEND TRADE SECRETS ACT**

**30.** Cooler Master incorporates by reference each and every allegation set forth in paragraphs 1 through 29 above as if fully stated herein.

**31.** Aavid and Boyd have jointly and severally violated 18 U.S.C. § 1836, *et seq.* (otherwise known as the "Defend Trade Secrets Act") by the alleged acts above. At the time of the unauthorized X-ray imaging, the confidential and trade-secret information embodied in the Non-Public Samples was preserved and protected by reasonable steps (including, by way of example, providing the Non-Public Samples only under the protection of contractual non-disclosure and confidentiality obligations). Aavid apparently misappropriated and misused this trade-secret information for Aavid's own benefit unrelated to the testing requested by the Third-Party Customer.

**32.** As noted and on information and belief, Aavid's misuse included at least the acquisition of the patents-in-suit to start a litigation campaign against Cooler Master and the development and dissemination of untrue infringement allegations designed to disrupt Cooler Master's existing and prospective economic relationships. Aavid knew or had reason to know that the Non-Public Samples were subject to a duty of confidentiality owed to Cooler Master. Aavid thus used improper means to acquire knowledge of the trade-secret information (including the unauthorized X-ray imaging described above), acquired the trade-secret information under circumstances giving rise to a duty to maintain its secrecy or limit its use, and derived the trade-secret information from or through the Third-Party Customer who owed a duty to Cooler Master to maintain its secrecy and limit its use.

**33.** Cooler Master has been injured by the conduct of Aavid and Boyd in an amount to be determined by proof at trial. Cooler Master reserves its right to seek the remedies available under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(B), including damages for actual loss caused by

the misappropriation and misuse of the trade-secret information, for unjust enrichment caused by the misappropriation of the trade-secret information that is not addressed in computing damages for actual loss, and at a minimum, a reasonable royalty based on Aavid's and Boyd's unauthorized use of the trade-secret information embodied in the Non-Public Samples. On information and belief, Aavid's misappropriation and misuse of the confidential trade-secret information was also willful and malicious, entitling Cooler Master to exemplary damages under 18 U.S.C. § 1836(b)(3)(C).

**COUNT II: VIOLATION OF CALIFORNIA UNIFORM TRADE SECRETS ACT**

**34.** Cooler Master incorporates by reference each and every allegation set forth in paragraphs 1 through 33 above as if fully stated herein.

**35.** For the additional reasons in Count I (paragraphs 31 to 33), Counter-Claim Defendants have also jointly and severally violated California Civil Code §§ 3426. *et seq.* (otherwise known as the "Uniform Trade Secrets Act") by the alleged acts above. On information and belief, Aavid's misappropriation of the trade-secret information embodied in the Non-Public Samples was willful and malicious, entitling Cooler Master to exemplary damages under California Civil Code § 3426.3(c).

**COUNT III: VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**

**36.** Cooler Master incorporates by reference each and every allegation set forth in paragraphs 1 through 35 above as if fully stated herein.

**37.** The acts and conduct of Counter-Claim Defendants as alleged above further constitute unlawful, unfair, and/or fraudulent business acts or practices within the meaning of §§ 17200 *et seq.* of the California Business and Professions Code (otherwise known as the "Unfair Competition Law"). Counter-Claim Defendants' acts and conduct have caused harm to Cooler Master and loss of money and/or property (including lost sales, etc.) in an amount to be proven at trial.

**COUNT IV: INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

**38.** Cooler Master incorporates by reference each and every allegation set forth in paragraphs 1 through 37 above as if fully stated herein.

**39.** Counter-Claim Defendants have jointly and severally committed intentional interference with prospective economic advantage of Cooler Master by the alleged conduct and acts

above. Cooler Master and the Third-Party Customer as well as other customers were in economic relationships that would likely have resulted in a current or future economic benefit to Cooler Master. Counter-Claim Defendants, knowing of such relationships, engaged in the wrongful conduct and acts described above in an attempt to disrupt the relationships, intending for their conduct and acts to result in disruption of the relationships. Counter-Claim Defendants' conduct resulted in disruption of the relationship, harming Cooler Master in an amount to be determined according to proof at trial.

**40.** Avid and Boyd conducted themselves as herein alleged with oppression, fraud, and/or malice, also entitling Cooler Master to exemplary damages under California Civil Code § 3294.

## PRAYER FOR RELIEF

WHEREFORE, Defendants request that the Court enter judgment:

A. In favor of Defendants against Aavid, thereby denying any and all relief requested by Aavid and dismissing its entire Complaint with prejudice;

B. That Aavid take nothing by way of its Complaint and/or its claims;

C. That Defendants have not infringed, contributed to the infringement of, or induced others to infringe, either directly or indirectly, any valid and enforceable claim of the patents-in-suit;

D. That this action be designated as exceptional under 35 U.S.C. § 285 and that Defendants be awarded with their fees and costs, for which Aavid and Boyd be jointly and severally liable;

E. That all asserted claims of the patents-in-suit are invalid and/or unenforceable;

F. That Counter-Claim Defendants have jointly and severally violated 18 U.S.C. § 1836, *et seq.*, California Civil Code §§ 3426, *et seq.*, and California Business and Professions Code §§ 17200 *et seq.*, and committed intentional interference of prospective economic advantage and that Cooler Master be awarded just damages, including without limitation exemplary damages pursuant to California Civil Code § 3294, and other applicable law.

G. That Counter-Claim Defendants be ordered to disgorge any improper and ill-gotten benefits they obtained as a result of their misappropriation of Cooler Master's trade secret and confidential information, and their interference with prospective economic advantage.

H. For attorneys' fees, prejudgment and post-judgment interest, and costs as permitted by law.

I. Such other and additional relief as the Court may deem just and proper.

Dated: February 22, 2018

Respectfully submitted,

Cooley LLP
REUBEN H. CHEN
KYLE D. CHEN

By: */s/ Kyle D. Chen*
Kyle D. Chen

Attorneys for Defendants
COOLER MASTER CO., LTD. and
CMI USA, INC.

164297969